The **BOARD OF REGENTS OF the UNIVERSITY OF NEBRASKA,**
Plaintiff,

v.

**A. Neil DAWES** and all Extension Employees at the University of Nebraska, College of Agriculture, who are similarly situated, Defendants.

No. CV73–L–190.

United States District Court,
D. Nebraska.

Jan. 3, 1974.

L. Bruce Wright, Lincoln, Neb., for plaintiff.

Stanley M. Talcott, Lincoln, Neb., for defendants.

## MEMORANDUM AND ORDER ON MOTION TO STRIKE

URBOM, Chief Judge.

This matter is before the court on the motion of the defendants, filing No. 10, to strike paragraph numbered 7 of the amended reply of the plaintiff.

The plaintiff, a political subdivision of Nebraska, has brought this declaratory judgment action, seeking a declaration that a compensation adjustment plan implemented by the University of Nebraska whereby salaries of women employees were increased does not violate the equal pay provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

The defendants, employees of the University of Nebraska, have counter-

claimed for unpaid wages, liquidated damages, and attorney fees under § 16(b) of the Fair Labor Standards Act. In its amended reply to this counterclaim, the plaintiff in paragraph numbered 7 asserts that the Eleventh Amendment of the Constitution bars the counterclaim and that the plaintiff has neither waived immunity from suit nor consented to be sued. The defendants have moved to strike this portion of the reply, on the ground that the plaintiff by bringing suit has consented to be sued by counterclaim.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

■■ It has been held that the Eleventh Amendment bars suit against a state by citizens of the same state. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Immunity from suit, however, may be waived by a state, or suits may be prosecuted against a state by its citizens, if authorized by statute. Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1944); Brennan v. University of Kansas, 451 F.2d 1287 (C.A. 9th Cir. 1971).

It has recently been held by the Supreme Court that § 16(b) of the Fair Labor Standards Act does not effect a waiver of sovereign immunity by the states and does not permit citizens to sue their state directly. Employees of Department of Public Health & Welfare of Missouri v. Department of Public Health & Welfare of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). It is certain that the defendants could not sue the state, or a state agency, directly under § 16(b) of the Act.

Furthermore, as to counterclaims, the general rule is as stated in State of

Alaska v. O/S Lynn Kendall, 310 F. Supp. 433, 435 (U.S.D.C.Alaska 1970):

"Although a counterclaim may be asserted against a sovereign by way of setoff or recoupment to defeat or diminish the sovereign's recovery, no affirmative relief may be given against the sovereign in the absence of consent. United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1939); United States v. Finn, 239 F.2d 679 (9th Cir. 1956); In re Greenstreet, Inc., 209 F. 2d 660 (7th Cir. 1954); Rule 13(d), Federal Rules of Civil Procedure."

See, United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940).

■ Because it does not appear that the counterclaim alleged against the plaintiff sounds in recoupment or setoff, the issue is whether the plaintiff, a governmental unit of a state, consents to being sued by a counterclaim when the plaintiff files a declaratory judgment action. I think it does not.

Citing Parden v. Terminal Railway of the Alabama State Docks Department, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), State of Iowa v. Union Asphalt & Roadoils, Inc., 409 F.2d 1239 (C. A. 8th Cir. 1969), and People of Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 763 (1914), the defendants argue that the plaintiff has consented. Examination must be made of those cases. Each is distinguishable.

In *Parden* the court held that a state, by owning and operating a railroad, consented to come within the requirements of a federal act, FELA, and within the specific provision of that act that "every common carrier . . . shall be liable in damages . . ." and "under this chapter an action may be brought in a district court of the United States." Congress' constitutional power to control interstate commerce was given as the basis for power to force a state to be subject to suit in a federal court, if it chose to operate a railroad. The court distinguished cases holding that a state's

intention and state law governed the waiver issue, saying:

"Where a State's consent to suit is alleged to arise from an act not wholly within its own sphere of authority but within a sphere—whether it be interstate compacts or interest commerce —subject to the constitutional power of the Federal Government, the question whether the State's act constitutes the alleged consent is one of federal law. Here, as in *Petty* [Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804], the States by venturing into the congressional realm 'assume the conditions that Congress under the Constitution attached.' 359 U.S., at 281–282 [79 S.Ct. 785, at 790]."

But Congress has not made suability in the federal court a condition of coverage under the Fair Labor Standards Act. This is an irresistible implication of Employees of Department of Public Health & Welfare of Missouri v. Department of Public Health & Welfare of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). The Supreme Court has distinguished *Parden* by saying that it involved operation of a railroad for profit, and, as to nonprofit facilities subject to the Fair Labor Standards Act, "we cannot conclude that Congress conditioned the operation of these facilities (hospitals and training schools for delinquent girls) on the forfeiture of immunity from suit in a federal forum." In the present case the institution is a university, a nonprofit institution,[1] and *Parden* undoubtedly does not apply. Thus, there is no waiver or consent merely by operation of the University of Nebraska. Moreover, the filing of a suit in a federal court can scarcely be argued to be the "venturing into the congressional realm" contemplated by *Parden*.

Certain language in *State of Iowa v. Union Asphalt & Roadoils, Inc.*, supra, appears to be broad enough to suggest that filing of a lawsuit waives immunity from a counterclaim:

"Having voluntarily invoked the jurisdiction of the federal court the state must submit to any valid order or judgment within the authority of the court to enter."

That broad language was not written with any counterclaim issue in mind. The state legislature of Iowa had specifically assented to suit "in a court having jurisdiction over the subject matter thereof." As long as it reasonably could be concluded that the state legislature intended thereby to consent to suit in a federal court, as the state attorney general conceded it had, consent was well-founded. In the face, however, of United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940), and Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L. Ed. 389 (1945), I think no consent by the state to suit in the federal court can be found in the present case.

The *Shaw* case sets the pattern regarding immunity. While it dealt with immunity of the United States, no basis is seen for considering the rationale to be less appropriate for immunity of a state. The court squarely held that invocation of a state court's jurisdiction by the United States did not effect a waiver of immunity regarding what was denominated a cross-claim but which was the equivalent of a counterclaim.[2] Against the argument that "when a sovereign voluntarily seeks the aid of the courts for collection of its indebtedness it takes the form of a private suitor and thereby subjects itself to the full adjudication of the court", the court observed that jurisdiction does not exist in a case against the United States "unless there is specific congressional authority for it" and "we find no Congressional action modifying the immunity rule in favor of

---

1. Whether in toto a university is more like a training school for delinquent girls, a hospital, or a railroad, is for the wags to wag about.

2. The United States asserted a claim against the administrator of an estate; the administrator asserted a claim against the United States in an amount larger than the United States' claim.

cross-actions beyond the amount necessary as a set-off."

 If the filing of an action amounted to a waiver of suit by counterclaim, the result would be that any official authorized to file suit would be able to waive immunity to counterclaim. The *Ford Motor Co.* case makes it clear that officers of a state cannot waive a state's immunity unless the state by constitution or statute has waived or given an official authority to waive immunity from suit in a federal court, and the issue of whether such authority has been given is a matter of state law.[3] Nothing the court has been able to find suggests constitutional or statutory waiver by the State of Nebraska or authorization to any official or the Board of Regents to waive immunity.

According to Article VII, Section 10, of Nebraska's Constitution the "duties and powers [of The Board of Regents of the University of Nebraska] shall be prescribed by law . . ." Section 85–105, Nebraska R.R.S., states that the Board of Regents "may sue and be sued." No other grant of power regarding immunity is apparent. In construing a similar Indiana statute the Supreme Court of the United States said:

"[W]e should be of the opinion, until otherwise advised by Indiana adjudications, that the consent was limited to suits in the state courts." Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 466, fn. 8, 65 S.Ct. 347, 351, 89 L.Ed. 389.

To be sure, the United States Supreme Court in People of Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 58 L. Ed. 763 (1914), was less protective of governmental immunity than in the foregoing cases, but whatever may be said about consent by the government of Porto Rico, it seems to me that immunity of a state must be regarded by the

same standard as immunity of the United States. That standard requires consent, not by legal counsel's filing of a suit, but by legislative authority, the same authority as must respond fiscally to a judgment for damages.

Denial of the defendants' motion to strike the defense of immunity should not deprive them of a remedy, if they prevail on the declaratory judgment action. The Fair Labor Standards Act, by § 17, authorizes the Secretary of Labor to bring remedial action on behalf of employees. See Employees of Department of Public Health & Welfare of Missouri v. Department of Public Health & Welfare of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

It therefore hereby is ordered that filing No. 10, the motion of the defendants to strike paragraph numbered 7 of the plaintiff's reply, is denied.

---

3. The court said:

"It is conceded by the respondents that if it is within the power of the administrative and executive officers of Indiana to waive the state's immunity, they have done so in this proceeding. The issue thus becomes one of their power under state law to do so."

323 U.S. at 467, 65 S.Ct. at 352.