MARGARET E. HARRIS, Plaintiff

v.

MUNICIPALITY OF ST. THOMAS AND ST JOHN,
et al., Defendants

Civil No. 355 - 1952

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

March 9, 1953

*See, also, 111 F. Supp. 63*

*Same case on appeal, see 3 V.I.*

DUDLEY, HOFFMAN AND MCGOWAN, Charlotte Amalie, St. Thomas, Virgin Islands (GEO. H. T. DUDLEY, Charlotte Amalie, St. Thomas, Virgin Islands, of counsel), *for plaintiff*

CYRIL MICHAEL, District Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for defendant municipality*

MOORE, *Judge*

This is an action for damages in the amount of $25,000

arising out of injuries sustained by plaintiff, while traveling along the public street at the intersection of Trumpeter Gade and Vimmelskafts Gade, Queens Quarter, and caused by a loose steel plate covering the salt water main. Plaintiff is suing: (1) the Municipality of St. Thomas and St. John for its alleged failure to discharge an alleged implied contractual obligation to maintain the public way in a safe condition: (2) Donald S. Boreham as the servant of the Municipality charged with the duty of supervising and maintaining the public roadways; and (3) Ella Blanche Barbel as the owner of the property which is connected to the salt water main in issue.

This matter came on for hearing on a motion by the Municipality of St. Thomas and St. John to be dismissed from the action as a party defendant on the ground of lack of jurisdiction. The Municipality entered a special appearance for the sole purpose of contesting the jurisdiction of the Court.

The Municipality avers that: (1) it is exempt from suit without its consent; (2) under its Organic Act (1936; prec. 1 V.I.C.), it has no authority whatever to be sued in tort, and (3) this is a suit in tort.

Plaintiff, Margaret E. Harris, contends that: (1) the Municipality is liable to suit on the grounds that the defendant Municipality is a municipal corporation vested with full and complete control over its streets and highways, and (2) the Organic Act is a contract between the Federal Government and the Municipality for the benefit of third parties who may sue thereon.

The question before the Court is, therefore: Is the Municipality of St. Thomas and St. John a municipal corporation and/or can it be sued without its consent in a case of this nature?

The Virgin Islands is an outlying possession of the United States and as such has been governed as a terri-

tory of the United States. Its organization and powers are set forth in an organic act passed by the Congress of the United States in 1936, sections 2 and 3 of which provide as follows:

"SEC. 2. The insular possession which is the Virgin Islands shall be divided into two municipalities, namely, (1) the municipality of Saint Croix and (2) the municipality of Saint Thomas and Saint John. The boundaries of said municipalities shall be the same as at present established in accordance with laws in force on the date of enactment of this Act, and the capital and seat of the central government shall be Saint Thomas. In this Act the phrase 'the Government of the Virgin Islands' shall include, in addition to the governing authority of the insular possession, the governing authority of the two municipalities, unless the context shall indicate a different intention.

"SEC. 3. The inhabitants of the municipality of Saint Croix and of the municipality of Saint Thomas and Saint John are hereby constituted into bodies politic and juridic, under the present name of each such municipality, and as such bodies they shall have perpetual succession and power (a) to adopt and use an official seal; (b) to sue and in cases arising out of contract to be sued; (c) to demand the fulfillment of obligations under the law and to defend and prosecute all actions at law; (d) to acquire property by purchase, exchange, donation or bequest, by virtue of proceedings for the collection of taxes, by eminent-domain proceedings, or by any other means provided by law, and to possess, administer, and govern such property; and (e) to alienate or encumber any of their property, subject to the provisions of this Act." 49 Stat. 1807, ch. 699, secs. 2 and 3, 48 U.S.C. §§ 1405a, 1405b.

■ "Territories" of the United States have been recognized as "inchoate states" and as "temporary sovereign governments" organized under the laws of Congress and limited only by the organic law and the Constitution of the United States. Ex parte Morgan, D.C., 20 Fed. 298, 304; Territory of Dakota ex rel. McMahon v. O'Connor, 5 Dak. 397, 41 N.W. 746, 3 L.R.A. 355, 359; First National Bank of Brunswick, Maine v. County of Yankton, Dakota,

101 U.S. 129, 25 L. Ed. 1046, 1047. It has also been said that "a territory is a distinct political society and therefore sovereign in its action, except as limited by the Organic Act . . ." Territory v. Lee, 2 Mont. 124, 133. Of the status and rank of territorial governments, the Supreme Court has said:

"The government of the territories of the United States belongs primarily to Congress and secondarily to such agencies as Congress may establish for that purpose . . . The extent of the power thus granted depends entirely upon the organic act of Congress in each case, and is at all times subject to such alterations as Congress may see fit to adopt." Snow v. United States, 18 Wall 317, 85 U.S. 317, 21 L. Ed. 784.

It is argued that the Virgin Islands is a territory of the United States within the meaning of the above definitions. The Supreme Court has many times reviewed the nature and status of the government of specific territories and its decisions with respect to various territories have been cited by counsel on each side and the Court has studied them carefully.

With respect to Puerto Rico, it has been necessary for the Supreme Court to determine in various instances whether Puerto Rico was included in acts of Congress referring simply to "states and territories." In Gromer, Treasurer of Puerto Rico v. Standard Dredging Co., 224 U.S. 362, 32 S. Ct. 499, 502, 56 L. Ed. 801, 805, the court in reviewing the taxing power of Puerto Rico said that "The purpose of the (organic) act is to give local self-government, conferring an autonomy similar to that of the states and territories." Also, in Kopel v. Bingham, 211 U.S. 468, 29 S. Ct. 190, 192, 53 L. Ed. 286, where the Supreme Court had before it the question whether the Governor of Puerto Rico had the power to request arrest

and surrender of a fugitive criminal by the Governor of New York, it was declared by the court that:

"It may be justly asserted that Puerto Rico is a completely organized territory, although not a territory incorporated into the United States, and that there is no reason why Puerto Rico should not be held to be such a territory as is comprised in § 5278[█]."

The District Attorney cites the case of the People of Porto Rico v. Rosaly y Castillo, 227 U.S. 270, 274, 33 S. Ct. 352, 353, 57 L. Ed. 507, as the principal authority that the government of the Virgin Islands is likewise exempt from suit without its consent. In this case the Supreme Court, after quoting the Gromer case, supra, concluded that "immunity from suit without its consent is necessarily inferable from a mere consideration of the nature of the Puerto Rican government." The court then discussed section 7 of Puerto Rico's Organic Act which reads as follows:

"Sec. 7. All inhabitants continuing to reside in Porto Rico who were Spanish subjects on the 11th day of April, 1899, and then resided in Porto Rico, and their children born subsequent thereto, shall be deemed and held to be citizens of Porto Rico[█], and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain on or before the 11th day of April 1900, in accordance with the provisions of the treaty of peace between the United States and Spain entered into on the 11th day of April 1899; and they, together with such citizens of the United States as mey reside in Porto Rico, shall constitute a body politic under the name of the People of Porto Rico, with governmental powers as hereinafter conferred, and with power to sue and be sued as such." 31 Stat. 79, ch. 191, sec. 7 (Organic Act of 1900; prec. 1 Laws of Puerto Rico Annotated), 48 U.S.C. § 733.

and said that:

"Unquestionably the provision (Sec. 7), disconnected from its context, would sustain the conclusion that there exists a general liability to be sued without reference to consent . . . The destructive potency of the words if given the meaning insisted upon is self-evident, since the claim here is that they denature the government created by the organic act by depriving it of an immunity which has been frequently decided by this court would otherwise necessarily arise from the scope of the powers conferred."

The court was also of the opinion that to allow a suit against the government of Puerto Rico without its legislative consent would be an exercise of judicial power which would be destructive of the system of separation of powers set up by Congress.

The decision in People of Porto Rico v. Rosaly y Castillo, supra, has been affirmed by the Supreme Court in many subsequent cases. People of Porto Rico v. Ramos, 232 U.S. 627, 34 S. Ct. 461, 58 L. Ed. 763; People of Porto Rico v. Emmanuel, 235 U.S. 251, 35 S. Ct. 33, 59 L. Ed. 215, 218; People of Puerto Rico v. Shell Co., 302 U.S. 253, 266, 58 S. Ct. 167, 82 L. Ed. 235; Sancho Bonet, Treasurer of Puerto Rico v. Yabucoa Sugar Co., 306 U.S. 505, 307 U.S. 613, 59 S. Ct. 626, 83 L. Ed. 946. In the last mentioned of these cases, Sancho Bonet v. Yabucoa Sugar Co., the court specifically reaffirmed the Rosaly y Castillo case and held that "This suit (to enforce a tax refund) cannot be maintained unless authorized by a Puerto Rican law because Puerto Rico cannot be sued without its consent." And as recently as 1948, in A. J. Tristani, Suc'rs, Inc., v. Buscaglia, Treasurer of Puerto Rico, 166 F.2d 966, 967, the Rosaly y Castillo case was invoked in support of a decision of the First Circuit Court of Appeals holding that plaintiffs had failed to comply with the conditions under which Puerto Rico by statute had consented to be sued.

Counsel also cites a case respecting Guam, an unincorporated territory. This case, Grain v. Government of Guam, D. C., 97 F. Supp. 433, 434, involving a proceeding for declaratory judgment brought by taxpayers, holds that where the Government of Guam was established by an Organic Act, even if the Act provided that the government could be sued, a territorial government so created is immune from suit without the government's consent. The section (sec. 3) of the Organic Act of Guam (1950) to which the court referred reads as follows:

"Guam is declared to be an unincorporated territory of the United States and the capital and seat of government thereof shall be located at the city of Agana, Guam. The government of Guam shall have the powers set forth in this chapter and shall have power to sue by such name. The government of Guam shall consist of three branches, executive, legislative, and judicial, and its relations with the Federal Government shall be under the general administrative supervision of the head of such civilian department or agency of the Government of the United States as the President may direct." U.S.C. Title 48, sec. 1421a.

The District Attorney contends that these cases respecting the powers and status of the governments of Puerto Rico and Guam are persuasive of a similar interpretation of the Organic Act of the Virgin Islands, since the Virgin Islands is also an organized territory with powers comparable to those of a state. As bearing on this point, the case of H. I. Hettinger & Co. v. Municipality of St. Thomas and St. John, 3 Cir., 2 V.I. 509, 187 F.2d 774, 776, is cited. In this case the court had before it a question as to the extent of the municipality's power to tax under the Organic Act and it was said by the Third Circuit Court of Appeals that "Congress in the statute cited gave the Islands broad taxing power comparable to that possessed by the States."

Counsel for plaintiff argues that the Municipality of St. Thomas and St. John is a municipal corporation and

as such is liable for injuries to pedestrians resulting from its negligence, in the absence of specific statutory exemption. Counsel pleads very strongly respecting the District of Columbia, pointing out that it is also a territory of the United States.

The first of these cases is Barnes v. District of Columbia, 91 U.S. 540, 23 L. Ed. 440. In this case the Supreme Court held the District of Columbia to be a municipal corporation liable for injury to an individual caused by its negligence or that of its agents. The court stressed that there could be no ambiguity as to the status of the District of Columbia as Congress expressly declared that it was creating a municipal corporation. The pertinent section of the Organic Act of the District of Columbia is as follows:

"Section 1. Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled. That all that part of the territory of the United States included within the limits of the District of Columbia be, and the same is hereby, created into a government by the name of the District of Columbia, by which name it is hereby constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this act." 16 Stat. 419, ch. 62, sec. 1 (Feb. 21, 1871).

The second case, District of Columbia v. Woodbury, 136 U.S. 450, 10 S. Ct. 990, 992, 34 L. Ed. 472, is also an action for damages sustained by reason of the negligent condition of the streets. The question in this case was: did the later Organic Act for the District of Columbia, subsequent to the Barnes case, alter its liability? The Supreme Court held that it did not since the Act of 1874 (June 20, 1874, ch. 337, 18 Stat. 116) maintained the provision of the Act of 1871, quoted above, creating the

district "body corporate for municipal purposes." Thus, since Congress did not alter its "express declaration" that the District of Columbia shall be a body corporate, it therefore intended that the district continue to be liable for its negligence in accordance with the established rule of law that municipal corporations are responsible for mere negligence.

■ It is true that the District of Columbia and the Virgin Islands are both territories of the United States organized under organic laws enacted by the Congress of the United States. But there the likeness ends. Congress has the power to organize different territories differently and to grant to each such powers as it deems proper.

■ "[It must be remembered that Congress, in the government of the territories as well as of the District of Columbia, has plenary power, save as controlled by the provisions of the Constitution; that] the form of government [it] shall establish is not prescribed, and may not necessarily be the same in all the territories. We are accustomed to that generally adopted for the territories, of a quasi state government, with executive, legislative, and judicial officers, and a legislature . . . with the power of local taxation and local expenditures; but Congress is not limited to this form. In the District of Columbia it has adopted a different mode of government, and in Alaska still another." Binns v. United States, 194 U.S. 486, 24 S. Ct. 816, 817, 48 L. Ed. 1087, 1089. The particular wording of the Organic Act of each territory must, therefore, be determinative of the powers of each government and each specific grant must be construed with reference to the whole Act and the general type of government set up by it.

■ Counsel seems to predicate his argument on the premise that the Municipality of St. Thomas and St. John is a municipal corporation. The Court agrees with counsel

that if the Municipality were in fact a corporation, it would be liable for its negligent acts and other torts. However, the Court is of the opinion that the Virgin Islands consisting of the two bodies political (1) St. Thomas and St. John and (2) St. Croix, constitutes a territory of the United States with such attributes as are set forth by Congress in its Organic Act of 1936 (prec. 1 V.I.C.), 48 U.S.C. § 1405 et seq. By this Act the Virgin Islands has its own territorial governor, its own separate legislature for the Virgin Islands, as well as for each municipality, and its own separate judiciary. The powers enumerated in section 3 of the Organic Act, quoted in the opinion, are similar to those conferred upon the Government of Puerto Rico before the present commonwealth was established, and which government, we have seen, has been repeatedly held to be of such a nature as to come within the general rule exempting a government sovereign in its attributes from being sued without its consent.

■ ■ Before considering the meaning of the specific grants of the various territorial statutes, it is advisable that we discuss the question raised by counsel as to whether these attributes and legal consequences apply to each Municipality or to the government of the Virgin Islands as a single entity. In the first place, the section of the act which sets forth the rights and powers in issue speak only of the Municipality of St. Croix and the Municipality of St. Thomas and St. John and constitutes each as "bodies politic and juridic, under the present name of each such municipality." It, therefore, seems to the Court that Congress clearly intended to set up two distinct legal entities and the fact that they were referred to as municipalities merely continues a prior designation and does not make them municipal corporations without more said. We agree with counsel that no particular words are necessary to create a municipal corporation but we

also point to the fact that municipal corporations are usually and characteristically described in their charters or organic laws as "bodies corporate" and not merely as "bodies politic and juridic." The organic law of the District of Columbia, on which counsel so heavily relies, creates a municipal corporation in very explicit terms. Whereas, the organic law of Puerto Rico while granting to that territory such powers as may or may not be attributes of a corporation, did not create a corporation by its terms; and the Supreme Court held that the attributes granted to the people of Puerto Rico thereby were attributes of sovereignty which could not be destroyed by the interpretation there contended for which is exactly what counsel now contends with respect to the Virgin Islands.

Although this court considers the decision of the Supreme Court in the Rosaly y Castillo case, supra, as controlling, it wishes to draw attention to the case of Kawananakoa v. Polyblank, 205 U.S. 349, 352, 27 S. Ct. 526, 527, 51 L. Ed. 834, 836, which involved the question whether the territory of Hawaii could be sued without its consent. This case was originally brought for foreclosure of a mortgage but the issue arose as to whether the territory of Hawaii could be made a party defendant, without its consent to the suit since a part of the mortgaged land had been conveyed to it for a street. It was argued that the territory of Hawaii is liable to suit like a municipal corporation irrespective of consent and Hawaii was likened to the District of Columbia which is liable to suit without its consent. Mr. Justice Holmes rendered the opinion of the court, holding the territory of Hawaii immune from suit of any kind without its consent and saying, in part:

"A sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical

ground that there can be no legal right as against the authority that makes the law on which the right depends. . . .

". . . the doctrine is not confined to powers that are sovereign in the full sense of juridical theory, but naturally is extended to those that, in actual administration, originate and change at their will the law of contract and property, from which persons within the jurisdiction derive their rights. . . . But that is not the case with a territory of the United States . . . the territory itself is the fountain from which rights ordinarily flow. It is true that Congress might intervene . . . But the rights that exist are not created by Congress or the Constitution, except to the extent of certain limitations of power. The District of Columbia is different, because there the body of private rights is created and controlled by Congress, and not by a legislature of the district. But for the territory of Hawaii it is enough to refer to the organic act." Act of April 30, 1900, ch. 339, secs. 6, 55 (31 Stat. 142, 150), 48 U.S.C. §§ 496, 562.

In the instant case the same theories and arguments hold. The territory, being the "fountain from which rights flow" and a sovereign, even though not in the full sense, cannot be sued without its consent since without its authority or consent no right exists.

Now, we compare the language of the specific grants relating to the nature of each territory and the power to sue and be sued as contained in the organic laws of the different territories cited by counsel on each side.

District of Columbia — "body corporate for municipal purposes" and "may . . . sue and be sued, plead and be impleaded . . . and exercise all other powers of a municipal corporation."

Guam — "an unincorporated territory . . . and shall have power to sue by such name."

Puerto Rico — "a body politic . . . with power to sue and be sued as such."

Virgin Islands — "bodies politic and juridic" and "shall have . . . power to sue and in cases arising out of contract, to be sued . . ."

In the case of the District of Columbia, a municipal corporation is expressly created by the words of the statute

and given the power to sue and be sued without limitation or qualification, as well as power to plead and be impleaded and to exercise all other powers of a municipal corporation. Congress left no doubt that it intended it to be liable both in tort and contract as is the general rule respecting municipal corporations.

In the case of Guam, which is declared simply to be an unincorporated territory, no mention is made whatsoever of its being sued and the court has held that it cannot be sued without its consent.

In the case of Puerto Rico, the organic law said nothing of a municipal corporation or body corporate, but spoke only of a body politic with power to sue and be sued. Yet, in the case of this territory, as in the case of Guam, the Supreme Court held that it came within the general rule exempting such governments (governments sovereign in their attributes) from suit without their consent and held so despite the fact that no limitation was specified by Congress.

■ ■ In the case of the Virgin Islands, the municipalities are declared to be bodies politic, as is Puerto Rico; however, the power to be sued is not unrestricted as in the Puerto Rican Act, but is limited by the phrase "in cases arising out of contract." Therefore, Puerto Rico may be sued with its consent in either tort or contract, whereas the Virgin Islands may be sued with its consent in contract only. Neither may be sued without its consent. The Municipality of St. Thomas and St. John cannot be held to be a municipal corporation in one respect and liable to suit without its consent and, yet, sovereign in its other attributes and not liable to suit without its consent.

American Jurisprudence in volume 49 very lucidly and concisely summarizes the position with respect to actions against states and territories and it might be well to quote here the pertinent paragraphs.

Sec. 136. "The well-established rule that a state is not liable for the negligence or misfeasance of its officers or agents, except when such liability is voluntarily assumed by its legislature, is no doubt applicable to the torts of territorial officers, including those appointed by the United States government as well as those elected under the laws of the territory." p. 343.

Sec. 142. "The principles governing actions by or against territories are, for the most part, similar to the principles which govern actions by or against states, the only difference being that Federal sovereignty is involved. This is true because the same provisions of immunity extend to the Federal government as extend to the state governments." p. 347.

Sec. 143. "The incorporated territories have always been held to possess an immunity from suit without their consent, and although a territory is not an integral part of the United States, the same rule shall apply." p. 347.

Sec. 144. "Actions by or against the District of Columbia are controlled by the general principles governing other territories which are similar to those governing states. The general immunity from suit accorded all territories has been waived for the District of Columbia by Act of Congress." p. 348.

As to the final contention that this is a case of an implied contract and a third party beneficiary. Counsel has argued that by the terms of the Organic Act there exists a contract between the Federal Government and the Municipality that the latter will maintain the streets and public ways in a safe condition for the benefit and protection of pedestrians making legitimate use thereof; that plaintiff is a pedestrian using said streets legitimately and with due care and is, therefore, a third party beneficiary of this contract; and that defendant Municipality failed to discharge its obligation under the contract.

The Court considers this argument ingenious but unsound. Neither the Territory nor the Municipality has any inherent power to bargain and agree with its sovereign, and such revocable power as the sovereign may grant can in no sense be considered a contract between them. However, the very instrument (the Organic Act), which

plaintiff calls the contract, by its own terms restricts the territory from being sued in tort. So that even if this instrument were a contract, which it is not, its very terms restricts suits of this nature.

The motion to dismiss as to the Municipality of St. Thomas and St. John on grounds of lack of jurisdiction is, therefore, granted and the Municipality is herewith dismissed as a party defendant to this suit.